Good morning all. We will be hearing two cases today and we will start with Adorers of the Blood of Christ v. Transcontinental Gas Pipe Line Company, number 21-2898. Mr. Yoder, when you're ready. Thank you, your honor. Gretchen. Your honor, according to your statement, we are working to modify or change the certificate. Rather, they are only seeking monetary damages from Transco as provided for under the Religious Freedom Restoration Act, a completely separate federal law. Why does FERC's ability to award damages have anything to do with this? If you'd gone in front of FERC initially, as you should have from Adorers I, there wouldn't have been damages. So, you know, it's not like that's really at issue. Well, the issue here is the Religious Freedom Restoration Act and Transco's requirement to comply with that law. And in this case, those damages weren't available at the time of the FERC certificate. Well, they wouldn't be assertable. You hadn't suffered any damage at that point. RFRA makes appropriate relief available. That's right. So, where do you get this requirement that damages be available in a given suit as a result of RFRA? Tanzen didn't say that. Tanzen, when the Supreme Court looked at Tanzen, it looked at the history of 1983 cases and it said monetary damages for the violations of civil rights is entirely appropriate. Because Tanzen is a case where someone's rights were violated and the only chance to seek relief was afterwards. Now, let's rewind. Imagine you're back in front of FERC. There are two possibilities. Possibility number one is they find that there's a RFRA violation. In that case, they would reroute the pipeline, correct? That would have been one of the options for injunctive relief. That's correct. That would have been appropriate relief to reroute. And they rerouted for a bunch of other people. The other possibility is they find this is narrowly tailored to serve a compelling governmental interest. And they deny relief, right? So, you can get judicial review of that. But in either possibility, do you wind up getting damages if you exhaust with FERC, correct? I disagree, Your Honor. Tell me how, if you had gone in front of them, you would have gotten damages if you'd done this before the issuance of the certificate and authorization. Because this case isn't about the FERC certificate. This is about Transco's conduct post-FERC certificate. Okay, I want to read to you from your brief. Page 18 of your brief. You sent a letter, August 31, 2018, urging that natural gas service not be permitted to commence through the adorers' property. That's correct. Your challenge is that they are routing this pipeline through their property. The challenge is under RFRA that they are violating. What is the gravamen of the injury that the nuns suffer, that the pipeline runs through their property? It is that they are being forced to facilitate something that violates their religious beliefs. Okay, so either, if it does violate RFRA, if it's not narrowly tailored or this isn't a compelling governmental interest, then you win in front of FERC, right? What remedy does FERC grant if it's not rerouting the pipe? Let me answer this question. Give me a specific kind of relief, damages, injunction, declaration, something you learned in law school. FERC is limited to issuing certificates. It can affirm, and on review, affirm, modify, or? That's right, the circuit court. So what would FERC do to its certificate? So in Adorers 1, the court held that, in fact, FERC, if you're seeking injunctive relief, could, in fact, have changed the pipeline route. Okay. Right, and isn't that the appropriate relief that your clients really, really want? This is a case under RFRA. Would we be here if they had rerouted the pipeline not to run through your client's land? That's a question for Transco. Why do the Adorers have to? Yes or no. Yes or no. Would we be here if they had? Absolutely not. If Transco would have done what it's supposed to under the Religious Freedom Restoration Act. There is no administrative exhaustion. There is no requirement that Adorers, frankly, do anything. The Natural Gas Act, as Adorers 1 held, requires that these claims be funneled through FERC. If you are seeking? To affirm, modify, or set aside a certificate. By modifying the certificate, you would have avoided being here. Absolutely not, you said. There would have been no relief if they had modified the certificate to go around your land. And why should we allow a party to come in? Johnny, come lately. Sit on your rights. Transco spends all this money, builds the pipeline, and you come in now and say, oh, we want money. What's that going to do to the policy of everyone proceeding in front of FERC? You're not going to get people to bid on pipelines if people can lie in wait and then sue later for money damages. The Adorers didn't sit on their rights. It's the Adorers disclosed to Transco in 2014 that they opposed this based on their reason. They never filed an objection in the FERC proceeding. And there were 132 times that people objected, and they changed 50 percent of the original route. And your clients could have done that, but they didn't do that. Why should they not have had to do that in front of FERC? Because when Congress adopted RFRA, it made it clear that the burden is not on the victim. It is on the government or those actors. But isn't the essence of RFRA? Does RFRA blow a hole in every administrative exhaustion requirement? Does it blow a hole in, you know, the requirement of seeking, you know, prisoners, seeking relief for a seizure of their property? Are you saying that RFRA is not just about the substantive standard but also about every procedural mechanism required to exercise a right? Your Honor, all I can say is what RFRA says, which is that it applies in the implementation of every federal law unless Congress explicitly exempts that law. So RFRA controls. It governs. But the essence of RFRA is that you have the ability to go in and say this violates RFRA. Stop it. That's what RFRA is designed to do, to enable you to cause someone to stop doing what they're not supposed to do. With all due respect, I completely disagree with that. The court has not said that RFRA is a proactive means for people to tell a potential violator that they shouldn't do that. It allows for relief and a judicial proceeding and a claim to be filed for violations, and it puts the burden on the government. Why isn't that judicial relief through the appeal process after an agency hears it? And the implications of what you're saying seem to carry over to a number of other statutes that have similar channeling mechanisms. What would it do to the PLRA or Title VII or similar statutes? Your Honor, it's a statutory law Congress adopted, and it has to be. Your position is that Title VII's exhaustion requirement cannot be enforced, and the Prison Litigation Reform Act's exhaustion requirement cannot be enforced. Those are distinguishable because the individuals whose rights are being violated are not third-party individuals who are seeking relief. This is a permittee under the Natural Gas Act that is violating a third party that is not part of that. So for those circumstances, yes, I think it applies. But, permittees, you need there to be state action here. That's right. Okay? There's state action clearly when FERC grants a certificate. But how is TRANSCO state action once it owns the easement, once it owns the easement, and then it builds a pipeline on its easement? Where's the state action? Well, I think Penn East answers that question, which is in order to move forward with a certificate, they have to exercise the rights under the Natural Gas Act to condemn. And that is what is federal action and acting under color of law. And at that point, they are moving forward under federal law. Without that authorization, they can't do any of this. But doesn't that point back then to the FERC order that is what authorizes them to go to court for condemnation proceedings? That's the Penn East case. That's exactly the Penn East case where the Supreme Court said, in that case, New Jersey was challenging the right of the pipeline based on sovereign immunity grounds. And the Supreme Court said the order itself does not address that issue. Likewise, the order here does not address whether TRANSCO can or will or they're subject to damages for violating RFRA. Is there any way in which the harm that your clients suffer was not reasonably foreseeable throughout these proceedings from the time that the routing was proposed or announced that would run through? Is there anything unforeseeable about the way the pipeline is unfolding or the kind of harm it's causing? I don't know of any. And I think, in my opinion, that's exactly why TRANSCO had an obligation not to proceed in the way it did. But you're not saying there was some unforeseen leak from a pipeline or unforeseen harm, something else that was beyond what could or would have been discussed in the certificate proceedings? I am not aware of any leaks. That's clearly a concern that could arise. But at this point in time, the claim that we are pursuing as set forth in the complaint is that they are being forced to violate their religious beliefs to accommodate this implementation by TRANSCO. Why is this not an impermissible collateral attack under Tacoma and Williams? Tacoma, all issues in hearing in the controversy. Tacoma, because it's not a collateral attack in that, in this case, the Religious Freedom Restoration Act guarantees judicial relief for a violation. And FERC simply cannot grant damages. It's an administrative agency. RFRA requires a judicial proceeding. And if they can't grant damages... But they can grant appropriate relief. They can prevent the harm, which is foreseeable harm, from happening to your clients. I disagree. You don't disagree that it's foreseeable. You disagree that they can prevent the harm. I disagree that it's the adorers' obligation to stop TRANSCO from violating their rights. Okay, so you don't disagree that the damages are foreseeable. You don't disagree that they can't prevent it. You just say we have no obligation to go there. We have the right to choose a different form. I don't say that. Congress has said that. Congress has indicated in RFRA. This case is about RFRA. Doesn't that confuse original jurisdiction with exclusive jurisdiction? And the exclusive jurisdiction mechanism that's been set up in FERC for hearing these types of claims? It doesn't confuse it. Congress adopted RFRA, and it intended for RFRA to supersede other federal laws that got in the way of protecting religious liberties. All the more reason you need to go into FERC and say RFRA violation. It supersedes. You have to do something. And you keep talking about damages. Again, you had no damages when they were asking for the certificate. You had the ability to stop it. So the fact that they couldn't award damages, you didn't have any. As Judge Bevis said, you know, you're either going to get it rerouted or they're going to deny relief because there isn't a RFRA violation, or they condition the certificate or they put some conditions on the certificate, which they easily could have done. They did that in a lot of instances having to do with noise and other things. So, you know, you had the ability before FERC to get the relief you really wanted, which is don't do this to our land. Correct? You had the ability to do that. That may be the case, Your Honor. But I don't think under RFRA we had that waive the right to seek damages if TRANSCO proceeded in a manner that violated their rights. What does damages get you? What does damages get you? What are you going to get, $50,000? Thank you very much. They're suffering. They're suffering because the pipeline is going through the property. What does damages do? It is a recognition that in fact their rights have been violated, and it is compensation, and it is allowed under the Religious Freedom Restoration Act. You've been counsel for ADORs throughout this proceeding. Which proceeding, Your Honor? I'm wondering why the ADORs didn't appear before FERC. They were given notice. They were talking with TRANSCO before that. I was not counsel at that time. You were not. Are you aware of any reason why they didn't or couldn't have appeared before FERC? I am not aware of any reason they couldn't have. I'm aware that their understanding was that by notifying TRANSCO of their religious objections, that they had complied with what they needed to do in order to preserve their rights. And that's based on the Religious Freedom Restoration Act. And that was their understanding. Let me ask you about what I think we've been trying to get at in a different way, and that is why isn't RFRA satisfied if a statutory scheme provides relief ex ante? Is it your position it has to provide not only relief ex ante but also ex post to comply with RFRA? Yes. That's what the statute says. What does it say? It says appropriate relief. If appropriate relief is available ex ante, then what authority says that they have to provide additional lesser relief after the fact? My response to that is, first of all, there's no waiver. Under RFRA, there's no administrative exhaustion and there's no waiver. So it applies at every step. The Doors 1 involved a challenge to the certificate. It requested injunctive relief. Your Honor's right. If that would have gone through the FERC process and they modified it, it wouldn't be on their property. I mean, I can't dispute that. That's obvious. That didn't happen. So I think the question is, did that failure to go through FERC result in a waiver and give TRANSCO now the right to proceed however they want against third parties? But it's not however they want. It's comporting with the order, the authorization that they received from FERC. Doesn't Penney say that if what you're doing is really trying to deprive the licensee of the authority they were given under the license, that that is the definition of a collateral attack? That is not what we're trying to do. At this point, we are not challenging that. And I would point the Court in RFRA to the provisions that say it applies to all federal law and implementation of that law. When you take that and you look back to the judicial relief provisions that specifically say, if there is a substantial burden, then those people are entitled to assert a claim. That is all you need to know. There was a violation, at least an alleged violation of the complaint, and RFRA guarantees that right. Now the question is, could that claim for damages have gone to FERC? And the answer to that question is, absolutely not. It is an administrative agency. They don't have that jurisdiction. But how did you have a claim for damages at that point? You keep saying that. What was your claim for damages before FERC, before the certificate was even issued? I'm not talking about a Doris Warren. I'm talking about the current case. No, but you're talking about the fact that you said you had a claim for damages. But you didn't back then. No, I'm sorry. We did not have a claim for damages. Okay. Yeah, we were only seeking injunctive relief. And that is, frankly, how in a Doris Warren panel, this Court could essentially synchronize RFRA and the Natural Gas Act. This Court recognized that if there's a conflict, RFRA controls. Right. But you didn't. And in a Doris Warren, we said you need to go to FERC. And you didn't. You never did. And the Court also said we are not looking at damages because the adorers didn't ask for damages. Well, that was a footnote. It doesn't matter. Okay. Well, I'll defer to the Court on whether that matters or not, but it certainly specifically – It didn't assure you of damages. It said we're not dealing with it. That's right. I think that's right. And we are now back on that very issue, and I think it's a fundamentally different legal analysis. I don't think it's as simple as, well, you could have simply raised your claim for injunctive relief, and because you didn't, TRANSCO now is allowed to do whatever it wants in its implementation. We said in footnote 11 that it may have bearing at step two of Thunder Basin if we got to that point of the analysis. But many of our questions, I think, are going to, why do we even need to get to a Thunder Basin analysis? Why isn't this just on its face a collateral attack? I don't think you need to get to Thunder Basin, not because it's a collateral attack, but because I think the Religious Freedom Restoration Act controls, and it's a simple statutory analysis, which is RFRA guarantees the right to seek appropriate relief. We've sought damages, and the Natural Gas Act does not allow that claim to be heard, so the exclusive jurisdictional provisions simply do not apply. It's not a collateral attack. The FERC certificate, if you look at Penn East, they said it was not a collateral attack because the FERC certificate was essentially silent on whether the state of New Jersey could raise Eleventh Amendment immunity. It just didn't address it. It was a defense. It was a defense, but it was in the district courts. It's the same kind of procedural posture. That's the same thing here. FERC didn't say in its certificate, you are allowed to violate other laws. It couldn't have said that. It's an administrative agency. Congress empowered and instructed the courts to hear these cases, yet the court is sending it to an Article II agency. What I think is so odd here, though, is that the government agency is FERC, and the point at which Transco is clothed with FERC's authority is the point at which the agency gives it the power to take property. And you want to say you want us to dissect and divide the giving of the certificate. You want us to view that as that gives permission, but they don't have to go ahead and actually take the property until a later proceeding. But we slice it up then, and then you're going to have to go back to FERC, and in essence it's affirming, modifying, or setting aside the certificate. Not de jure, but de facto. It's going to set aside the certificate and require a new certificate. Why shouldn't we understand it that way? Because that's not what we're asking. We're not asking this court to set aside the certificate at all. We're asking for their day in court, which RFRA guarantees. Let me respond to it this way. I do a lot of zoning land use work. Represent clients. They'll go to the zoning hearing board. The zoning hearing board has its lane. We get you the zoning. But that doesn't give that client the ability to violate other laws. I think it's as simple as that. Sure, the Natural Gas Act has an exclusive jurisdiction for things that fall under its jurisdiction. No doubt about it. It doesn't come down to whether a claim for a violation of RFRA is within its jurisdiction. The claim is not about the remedy. The claim is about the substantive violation. And the substantive violation is one that could have been avoided entirely at the outset. By transco. That's my point. Or by your clients raising the objection so that it was heard and resolved in the FERC proceedings. Or if they got an adverse ruling on appeal. Why isn't this just a simple collateral estoppel even? Something could or should have been litigated. Well, Tacomi is a collateral estoppel where they actually went through the entire review process and then later through the bonds attempted to re-litigate it. Right. This has never been litigated. This has never been raised. This issue has never been addressed. We serve with notice of the condemnation. You were made a party to the condemnation proceeding. Right? That's true. Okay. And you were notified and given the opportunity to object to the issuance of the certificate. Isn't that correct? That's correct. Okay. And you didn't. And it's something that could or should have been litigated. Again, I think ADOR's one held that to the extent we're looking for injunctive relief, that that is what this court has said. I don't think that applies and forecloses the possibility that TRANSCO in implementing the pipeline can violate a third party. The ADORs are innocent bystanders.  How innocent? If they wanted to stop the pipeline from doing what they didn't want, what they didn't want was the invasion of the property. Correct? They did not want to be facilitating a pipeline that causes global warming. They did not want the property to be invaded. They did not want it on their property. Correct? They wanted it rerouted, presumably. Isn't that what they wanted? They did not want to be participating in TRANSCO's pipeline. That's correct. Okay. So they could or should have litigated that as to whether it was going over their property at the time of the certificate litigation. And they didn't. So why isn't that estoppel? That is a completely different issue. I mean, we're looking at a jurisdictional issue. It's not estoppel because estoppel is an equitable relief that requires that somebody is surprised. This isn't... TRANSCO knew. Their agent went to the Adores in 2014, and the Adores' official response was, we will never allow this to happen. The Adores and TRANSCO breathed a sigh of relief when they didn't show up and objected to FERC proceeding, and they got their certificate. They shouldn't have breathed a sigh of relief because RFRA, as Congress has said, applies throughout the process. But they had a RFRA claim back then, and they didn't assert it, right? They had a RFRA claim. They should... It could have been litigated then, and they didn't do it. If I'm an employee, and I know my employer is going to fire me for a religious violation, and I don't go to them and say, don't fire me because of my religious violation, and then they fire me, I still have the claim. Okay? That's different. Somebody who's going to fire you is different from a proceeding that has been... I mean, a procedure, a comprehensive procedure for determining where a pipeline can go under the NGA is entirely in front of FERC. And you keep saying that RFRA is some super statute. Okay. RFRA permits someone to bring a claim or a defense in a judicial proceeding for appropriate relief. That's... Okay. So we have proceedings, and we have the Court of Appeals, you know, going... If you don't like what FERC did, go to the Court of Appeals. You have, you know, judicial recourse. Again, and we've set forth in our brief that the Court of Appeals jurisdiction under the Natural Gas Act is limited, and it's based upon what FERC can do in the initial instance with the certificate. And, again, it's our position that the Natural Gas Act simply does not provide an available remedy through its own process to award monetary damages under RFRA. Your argument, when you continue to talk about the independent obligation of Transco, it sounds like you are imputing to them the obligation to raise an objection in FERC proceedings. And that seems like a fairly novel proposition, that an entity that has heard that there is an objection or potential claim needs to assert it on the part of the putative plaintiff. I think it's a fair question, and we try to address that in our brief, which is to say, yes, Transco does have an obligation to try and identify if there's going to be a substantial burden on the exercise of religion. I think RFRA makes that clear. It puts the burden. The statutory language could not be clearer. I think the question you're asking is, is it fair for a pipeline permittee to somehow try and find out all potential challenges? And I think the answer to that question is, yes, they have to take a good faith effort. I think that's what RFRA requires. And if, in fact, they identify potential issues with RFRA, then they do have an obligation to assure themselves that it's not going to be a problem. But why do they have the obligation to raise and press potential claims if the putative plaintiff isn't sufficiently concerned about avoiding the injury that they come forward to press that claim? Doesn't that put Transco in the position of needing to raise speculative claims on the part of property owners along the way? Not at all. I think Transco is in the perfect position to identify if there are, in fact, a religious order that owns land, identify them and be sure that there's not an issue there. But, Your Honor, all I can say is Congress adopted RFRA, and that's the law that we're left with. That's what has to be applied. Let me ask this different. Let's imagine there's a landowner who says nothing and does nothing, unlike your clients. Your clients made their objections clear, hangs back, lets the certificate be issued, the condemnation proceedings come along, and then only at that point, for the first time, they say, we want damages. Same result as in this case, right? You think they should be able to get damages, too, even if they don't raise a peep until the taking is proceeding? I think Transco has a very good argument as estoppel, as Judge Rendell has suggested. I think that's the exact result there, which is we didn't know about it. We proceeded in good faith. We expended a lot of money, and we now have a vested right in this, and you can't attack it. I hear the court's concern about somebody laying in wait, and that is a legitimate concern. Especially when you have a pipeline that involves lots of owners, and then one person's in a hold-up position. I understand that. That is a fair concern. It's just not this case, but that is an issue, and I think that Transco would not have to pay damages in that case. So you're saying Transco's knowledge that the Adores originally were opposed, that makes the difference in terms of estoppel? Absolutely. Wouldn't it be more logical for Transco to say, boy, I'm glad that they decided it wasn't that big a deal? I mean, if I get notice that somebody doesn't like something, you know, they don't like what I'm doing with my property, and then I go for zoning, and they never appear and object to it, then I'm assuming that they decided it wasn't worth the fight, and, you know, they weren't going to get a lawyer. But I don't think it has anything to do with estoppel. Well, again, I was the answer. But that's an interesting answer to Judge Bevis' question, that there would be estoppel if they didn't know. Well, I think there's a vested rights argument that you, I mean, at that point in time, you know, equitable relief would be appropriate. I mean, I think that is correct. Well, if we take that to its logical conclusion, aren't you then arguing that there's an affirmative duty on the part of a company like Transco to propose a different route, to offer a different route and end up with a different order than they did? That that's on them because they have heard along the way that someone has a religious objection? Absolutely. That's what religious, that's what RFRA requires. That is a, that is a. Then we're back, then we're back to the issuance of the order as what ultimately causes the injury. The order in this court has held doesn't require anything. The order is like a permit, but it doesn't require Transco to proceed. It doesn't say you have to condemn land. It doesn't say. It authorizes them to proceed. And City of Tacoma and Penn East upheld this concept. It says that if what you're trying to do is prevent a licensee from exercising that authority they were granted under the license, that is a collateral attack. Why don't we have that here? Because we're not trying to stop them from operating their pipeline. We are seeking monetary damages. And that is fundamentally what is at issue. That is the relief that's requested. RFRA carries through. So if Transco went out and did something now related to their pipeline and violated a third party's rights that caused harm, that third party would have every right to raise that claim as a separate action. And the exclusive jurisdictional provisions of the National Gas Act would not preclude that. The Fifth Circuit's case on point there. It would be an ultra virus type of act for FERC to try and award damages. And in this case, it's no different than that. Okay. I think we understand your argument. All right. Thank you. We're here for you on rebuttal. Ms. Whitman. May I ask, if we are to look at RFRA as providing this sort of overarching relief, why is it sufficient to satisfy RFRA that there is appropriate relief available ex ante? Let's take that as a given. Why shouldn't it also be available ex post? May it please the Court. Elizabeth Whitmer, Saul Ewing, Arnstein, and Lehrer for Transcontinental Gas Pipeline. To answer your question, it's because there is no inherent conflict in RFRA and the Natural Gas Act. FERC had the obligation to balance many factors, environmental factors, historic factors, and impact on landowners. If you look at paragraph 33 of the order, FERC issues the order finding that there is no impact on landowners in particular that would outweigh the benefits. Again, a certificate is for the public interest. So FERC is doing a very nuanced balancing test of many, many different factors. If you were to allow post relief, it is equivalent to the people hiding in the weeds. And it would undo every process that FERC does, not just for pipelines, but for... We can't let it undo it. We won't let it modify or set aside. But they're not asking us to modify or set aside the certificate. You foresaw you were going to have to pay for a bunch of different parcels of land. There were a bunch of things you were going to have to pay for in this process. And this is just another category of damages that you have to pay in the process of constructing the pipeline. You're completely authorized to construct the pipeline. Maybe this should lead us to be kind of cautious in the damage award, but they're not asking to modify or set aside the certificate. It's a direct attack on the certificate, respectfully. And if you look at the gravamen of the claim, it's paragraph 112 of the complaint. Transco's use day after day of a door's property in violation of the religious practice because it facilitates harm to the earth for as long as the pipeline remains in operation. The gravamen of the complaint here is that the pipeline itself causes harm. And then a door's counsel in his brief says, and at this point, because I couldn't get injunctive relief, the only relief I can get is damages. So let's go to American Energy, which uses a pretty good authority for yourself. But your friend on the other side turns it around. Judge Sutton says, well, there are some kinds of damages you can't recover in the nuisance proceeding. Now, under Ohio law, it turned out you could get most of them. Pennsylvania's condemnation law is a lot narrower. It allows you very limited consequential damages, like if you don't have road access or not up to the road grade. So let's come up with, imagine, you know, there is no provision under Pennsylvania law for noise. Let's imagine the pipeline makes a bunch of noise as it goes. It wakes up the nuns' chicken and sheep and keeps them from laying eggs and milking and things. Are you saying no relief is available, even though American Energy thought it would be available in some other kind of proceeding? Well, that would be a nuisance claim. Okay. Why can't they bring a nuisance claim? Because that is not cognizable in the eminent domain proceeding. I think if the operation violated the certificate, they could bring a nuisance claim, for example. That is midship, actually. And that is what happens. But does the certificate speak to this one way or the other? It does. So the certificate, FERC did not have the advantage of the adorers standing up and saying, this is a religious objection. And, in fact... What does the certificate say about nuisances, you know, noise or gas leaks or things like that? Oh, yes. The certificate examines how the operation will occur and what is proposed to mitigate any adverse effects. And that is why FERC asks everyone who is affected by the pipeline to tell them what those prospective effects would be. If you look at the order, if you look at the FMSA regulations that apply here, there are limits on noise. You don't actually have noise from pipelines, but you do from compressor stations, which were allowed under this certificate. And there are noise limits. And if there is a violation of the certificate, then there could be a nuisance claim under state law. So you would distinguish something that happens by virtue of the operation that is not able to be anticipated, if you will, or qualified or quantified at the time of the issuance of the certificate, versus the situation here where what ultimately happened is what was anticipated would have been happening at the certificate. Yes, I think that's correct, Judge Rendell. I mean, I just threw you a softball. I know. Yes. It is absolutely correct, Judge Rendell. The damage here adheres in the certificate, in the fact that the pipeline would be on the property. And you asked us to brief Midship. And in my mind, Midship is an issue where the certificate required remediation on individual properties, and the landowner said they didn't do it. And FERC said, OK, we're going to make them fix. We're going to make them remediate. And the landowner said, well, I want money, too. And FERC initially said, OK, we'll have the ALJ look and see how much money. And the court said, no, that is not within FERC's authority. You have other ways to claim that damages. And that's absolutely true, because certainly if there is an agreement with the landowner, there will be arrangements for damages. Every easement that is a negotiated easement contains provisions about indemnity and future damages that relate to things that were not foreseeable, not anticipated, simply by the existence of the pipeline. But this claim adheres in the actual operation of the pipeline on the property. How about the fact that the Third Circuit, albeit in a footnote, and the court in terms of the condemnation saying specifically, you know, we're not dealing with damages. You can go get your damages later. And then we say, wait a minute. You know, it's a collateral attack. Well, obviously, a couple of courts didn't think it was going to be a collateral attack. Why should ADORs have realized it was going to be a collateral attack? I think to unpack that, first of all, in the condemnation proceedings, the ADORs never raised a defense. They had an opportunity to file an answer. And under Rule 71.1, you can raise defenses. You can't bring counterclaims, but you can certainly raise defenses. And then the issue becomes both those defenses and the amount due. But because ADORs never answered the complaint, it was only the amount due. You actually made that argument at ADORs 1. That was kind of your opening salvo. But so take that. Are you saying this is just a simple collateral estoppel situation? I think it is. I tried to think about what we would do if you did remand. What would we do if you remanded? And we had to answer and assert defenses. And our defenses would be waiver, collateral estoppel, satisfaction. Because we have paid the condemnation damages due. Of course, that was just for the taking, not for any RFRA claim. Right. But I believe it's a question of law whether damages are appropriate relief under RFRA. And as the district court found, they're not here. What if you had an entity, and we have not heard quite this argument here, but what if part of the argument was that it would violate religious precepts merely to participate in the proceeding, that actively engaging as a participant would be a way of facilitating this violation of ultimately nature and the sanctity of their property? Would we have a different outcome if there was a basis under RFRA for declining to participate? I don't believe so. And that has been addressed in the context of grand jury subpoenas. And I'm sorry, I don't remember which one of you was on the panel that wrote that decision, but Judge Cross, it was you. And so in that case, there's a balancing then of the interests, whether there's a substantial interest in the government in getting the testimony and then the interest in protecting the religious practice. Because, again, you have to look at whether it's substantial, the burden under RFRA. Of course, if we had ever gotten there, we would have had a lot of arguments about whether, in fact, this is a substantial burden to have a pipeline underground at the edge of a cornfield. But we never got there, and appropriately so, because this is a lying in wait collateral attack. It was deliberate. But they weren't really lying in wait because you knew that they objected. We knew they objected. And if you look at the contact logs that are in the record, which my opponent cites, they say that the Adores objected to fracking. They object to the environmental impact. I was counsel for Transco throughout this. If I had a penny for every person who testified at the public hearings and wrote comments, that they objected to the environmental impact, I'd be retired. So it would have you affirmatively seek them out to foreclose them, basically. Right. And that gets to whether Transco had a burden, somehow, of reporting back to FERC. Let's say that in a conversation early on with a land agent, the nuns said, well, we object because it is a burden on our actual exercise of religion. Do we have the obligation to report that to FERC? I would argue no. People raise lots of objections, and they change their minds. And in this case, in particular, it's really egregious. Because FERC took the unusual step after the DEIS was issued. There was a lot of controversy in Lancaster County about where this pipeline should go. And there were alternate routes suggested by landowners, not by Adores, but other landowners, which affected Adores' property. And so Adores was one of a small subset of landowners who got a special letter from FERC asking for comments. FERC got 100 comments. In your recent submission, you said that there were 132 times that FERC addressed objections and changed 50% of the original route. Is that a matter of record? It is. It's in the FERC record. Actually, you can see it in the environmental impact statement, where FERC examines what routes it will adopt and not adopt. You talked a little bit about Transco sometimes sighing relief that somebody didn't say something. It was a blow, of course, to have proposed a certain route and then have to reroute. But it is part of the process. And that balancing act, which has been by Congress, delegated to FERC. FERC is supposed to look at every aspect. And so we have the Snoqualmie Indian tribe v. FERC case, where FERC did exactly that. Well, maybe your client doesn't have an affirmative obligation to raise a property owner's RFIR claim before FERC. But if it has been raised by a property owner with you, why isn't it sufficient that that puts you on notice? You then can either seek a different route or you're taking your chances as to litigation after the fact, knowing that there is a potential claim that is lying out there with regard to this particular statute, a different kind of statute with different sorts of powers than many other statutes. Well, I think I would respond in a couple of ways. First of all, we can't predict what someone's religious belief is, even if someone says it's a religious belief. Are they going to say that this is a burden on that belief and follow through? That burden is on them. You all have sat on panels for RFIR cases, and there's a wide variety of things that can be religious beliefs. We would never presume to have to define for our regulating agency what some third party's religious belief is, nor would we necessarily feel that we are taking the risk if that person makes a comment but then never follows up in a process that is very open, very transparent, and that results in FERC issuing an order that actually addresses impact on landowners. We would, to use Judge Rondell's word, heave a sigh of relief. We would not feel that we had then undertaken the RFIR burden. And in this case, we then did, several months later, file a condemnation. And no defense was raised, either. So we never, at any point in this case, felt that we had a real risk of RFIR burden here. What's the effect of the condemnation order? It says, we are going to, your land is being condemned for this purpose, correct? I mean, I'm just trying to think whether it does foreclose, in essence, or is it merely how much money are we going to give you? The way that condemnations unravel in pipeline cases is that we file a complaint and we don't get a traditional condemnation order. Instead, usually we need to build before we can determine damages. And so we file an injunction request for possession. And that is what we did here. And then the court determines whether or not... In a condemnation complaint, what relief are you seeking? We're seeking possession of whatever land rights were defined in the FERC process, workspace and permanent easement. So it doesn't incorporate the use to which it's going to be taken. So it's just we're taking it. Only to the extent that it's acknowledging that the only reason we even have the right to have a condemnation case is because we are the holder of a certificate that awards us the right to seek these property rights under the Fifth Amendment. So they didn't raise a defense, but it did result in you coming to an agreement as to dollars and cents. Eventually. They also did not appeal the injunction. So they didn't appeal the award of possession, which allowed construction to proceed. And then we continued to discuss whether there was a way to settle the matter. And in the end, we stipulated with Theodore's to the amount of damages for condemnation. Did you have to do... If they didn't raise any defense, then you affirmatively said, well, we'll give you money for this? No. You have the option under 71.1. But even if you don't file an answer, that just limits the issues to the dollars and cents. And that's where they said, we want RFRA damages. They did, as part of the discovery before we settled on money, say that they would like to find out how much money we're making from this pipeline so that they could assert RFRA damages in the condemnation portion that relates only to the assessment of damages. And the court said, you can't get them as part of the condemnation. Get them later. Yeah. Well, I don't think he said you can't. He didn't say you will get them later. He said you'd have to assert that somewhere else. Can you address... RFRA provides for claims for appropriate relief against the government. We've talked a lot about the significance of appropriate relief for the situation we face here. What about the against the government? Should that factor into our analysis and whether this is a collateral attack or not? First of all, I think under RFRA, because the government is broadly defined, Transco in the exercise of condemnation was acting as the government as RFRA defines it. For what period of time? I've never contemplated the period of time. It looks like on paper you're supposed to get the easement and then build the pipeline. But the way you've described it, it sounds like you're often doing it in a different order or kind of postponing the formal condemnation proceeding and getting the injunction first. Well, the injunction is just part of the formal condemnation proceeding. So as we all know, it can take about a year to get through a normal complaint process in the Eastern District of Pennsylvania. So if you want possession and you think you have the rights, you would file an injunction first, a process that actually Judge Randell in an opinion with Columbia confirmed many years ago, also for blanket certificates where you don't have a specific certificate. So it is all part of the formal condemnation proceeding. Transco is clearly not a government actor until it has a certificate. There's an open question, I think, of how much it is a government actor just by having the certificate. But it's certainly a government actor when it initiates the condemnation because that's a delegated federal authority, which under RFRA is defined as the government taking action. Once we have it, are we still a government actor? I think that's unclear. I suppose that's another reason why, though, Transco would not have had the burden during the certificate process of acting like a government agent, like FERC, trying to be impartial and reporting everything we heard from every landowner to FERC. FERC neither asks that or wants it. As you're building the pipeline, wouldn't you still be closed with the authority of the government at that point? It would seem from some kind of an immunity standpoint, maybe it would have to be. I don't know. I deliberately stayed away from the immunity questions because, again, those have not been resolved. I will tell you that when there's an issue when building, we come to the court and we seek relief. As a certificate holder, we're entitled to enforce the certificate. Does that make us the government because we're enforcing the certificate? I think a little unclear. Certainly the certificate in that sense stands on its own, and we're the ones who should be enforcing it. Thank you. Thank you. Judge Schmell. Thank you, Your Honor. Just very briefly, I wanted to highlight that in the condemnation proceedings, that as the panel has recognized, Judge Schmell clearly indicated that the adorers were free to bring their claim, but that's also essentially what Transco's position was. During those proceedings, they said any damages arising under RFRA that the adorers allegedly suffered arose from Transco's alleged interference with their religious exercise and sound and tort, and occurred well after the taking, after the project went into operation. That was Transco's position in the condemnation. Now, of course, in the condemnation, they're trying to avoid RFRA damages, and Judge Schmell said under Pennsylvania state law, I can't award RFRA damages. That's beyond the scope, because it's limited to what Pennsylvania law says. So their attempt to avoid it there was bring a separate action, because it's a tort-like damage. So then we bring a separate action, and they say, oh, no, you can't bring those actions, because you should have submitted that action to FER, even though FER can't award damages. Let me ask a question based on something discussing with Ms. Whitmer. You're not raising a claim like a nuisance claim or a noise claim that didn't arise until the pipeline was built. The harm you're claiming was anticipated at the time of the certificate, was it not? It's hard to know, because their certificate doesn't mandate anything. Well, the procedure that unfolded under FERC, let's say, the complaint that you had, and indeed you definitely thought you did because you wanted to bring it as part of the condemnation before the pipeline was even built. So it's really the same harm that you anticipated in the condemnation proceeding, is it not? It's not based on anything later that happened vis-a-vis the pipeline. That's right. I mean, essentially it's a claim under RFRA for violating their religious exercise, and that religious exercise, again, to bring this back to the big picture, this is a group of Catholic nuns who have taken vows to live out their faith, and I think we can't, we get really in the weeds, and rightly so. But you believed you had that claim at the time of the condemnation proceeding. And that claim continued beyond the condemnation, and that's the point. RFRA doesn't end. And FERC cannot issue a certificate and as part of that certificate somehow immunize a permit holder from a RFRA challenge. That would be giving an administrative agency way more authority than Congress ever intended. When you say the certificate does nothing, the certificate does codify a specific route, right? That's correct. A specific route on which they can build their pipeline. And that route, the injury to your clients is that route going through their property, right? That is part of it. It's also what is happening. It's not just the route. It's what they're doing. They're being asked to use land that they hold sacred to facilitate something that they've committed their lives to not allow happen. But if the routing was through the neighbor's property, your clients would not have any claim. That's absolutely correct. So the basis for the claim is the routing through their property. Not the routing. It's the implementation. And this goes to Penn East. This goes to Penn East. The route at issue, New Jersey could have objected to that in the NGA process. And they didn't. And they waited until the district court level. That dealt with the route, and it dealt with their ability to raise sovereign immunity. But you are drawing a distinction between the routing and the implementation of the routing. And Judge Krause observed that Tacoma forbids blocking the implementation of a certificate. And we're not. So my response was not to the implementation. We're not trying to block it. We're just saying if they implement it and it violates RFRA, we agree we can't stop it. We can't go to FERC and say, hey, this is violating RFRA. Revoke the certificate. Do you think that argument then puts a cap on your damages? Would you admit that if you got a $100 million damage judgment, that that's the functional equivalent of blocking the certificate? Possibly. Okay. So you think this has to be an amount of damages that would then be commensurate with not blocking the routing? I haven't thought of that question. I guess ultimately there is an issue of whether you have a company that proceeds knowingly, at least in our opinion, in a way that violates federally protected rights. You know, what are those consequences? But I do think that there could be a potential damage award that essentially was so large that it modified the certificate and in that case would be a collateral attack. I think that could conceivably happen. City of Tacoma, it's interesting. I don't do pipeline work regularly, so I have to read all these cases. When you read City of Tacoma, which is cited in and out, almost every case for collateral attacks, that case truly was a collateral attack. The state opposed the city's dam through the administrative process and then when they went to get bonds, the state courts denied it based on the same arguments they previously raised. You're making the argument that it's not you who's going back to FERC and saying, we want the order to be set aside or modified, but you are arguing that Transco has that obligation. If they want to build the pipeline, even after the certificate's been issued, that they would need to go back and have the order modified in effect on your behalf to route around the property and avoid this violation. Or pay damages. Again, if they decide, if they decide. All right, so the Doors 1 precluded injunctive relief. That ship has sailed, so to speak. But that did not preclude damages. And if Transco chooses to proceed on a certificate and implement that in a way that violates RFRA, we should still be allowed to get damages. It doesn't require them to do anything. They don't have to go back to FERC and change their certificate. We can't and we haven't challenged that certificate. Their operation will continue. If our clients go on there, they can call the federal marshals and have them arrested. But your argument put differently is that what the certificate authorizes them to do violates RFRA, isn't it? The certificate does not tell them what they have to do. It tells them how they have to route the pipeline if they build it. I think ultimately that's Transco's decision. That's right. I mean, if the FERC certificate identifies a route and when you go to implement that route, it violates a completely separate federal law that results in damages, then you're responsible for that, for complying with that law. RFRA, Congress was very clear when it adopted RFRA. And the Supreme Court has repeatedly said it is a super statute. It is like no other federal law on the books. That's the whole point. It's too disrupt. And so, yes, sometimes the consequences to other federal laws may seem very disruptive. That was the point. Any other questions? Thank you. All right. We thank both counsel for their excellent briefing and argument on this question. And we will take the case under advisement.